STRICKLAND *et al. v.* LOWRY NATIONAL BANK.

PER CURIAM. 1. An owner of land sold it partly for cash and partly for credit, giving to the purchasers a bond for title and taking negotiable notes for the unpaid portion of the purchase-money. The vendor for value indorsed one of these notes to a bank, and others to another person, and also executed a conveyance to each indorsee for an undivided interest in the property, in the ratio which the part of the debt transferred to such indorsee bore to the whole. Payments were made on the note indorsed to the bank. About three years after the maturity of the note, the bank took from the makers a new note, due five months after its date, for the balance claimed to be due on the original note, but bearing interest at an increased rate. It recited that it was given for value received, and that the makers "have pledged to the said bank, as collateral security," the original note and "security for the same." *Held,* that the second note was not a mere agreement collateral to the original note, extending the time for payment and increasing the rate of interest to be borne by it, but by its terms was a new note for the amount remaining due on the first note, bearing interest at the fixed rate, and the first note was to be held as collateral security for the second.

2. While a demurrer admits facts well pleaded in the petition, where it was alleged by the plaintiff that the second note was collateral to the first, but the copies of the notes attached as exhibits showed on their face that this was not correct, but that the parties agreed that the first note should be held as collateral to the second, on demurrer the contract will be construed in accordance with its terms so appearing, and not in accordance with the interpretation alleged by the pleader.

3. Under the facts stated in the first headnote, the bank could not, after the maturity of the second note, bring suit against the makers upon the first note and, at the same time, supplement its terms by applying to it the increased rate of interest specified in the second note.

(a) It was accordingly error to overrule the demurrer in so far as it set up that the suit upon the first note could not be supplemented by importing into it the increased rate of interest agreed to be paid in the second note.

4. An allegation that the plaintiff had caused to be served upon the defendants a written notice of its intention to bring "suit to this term of this court and to claim attorney's fees in accordance with the terms of said original note," together with a prayer for the recovery of such attorney's fees, was sufficient to show that the notice (based on § 4252 of the Civil Code of 1910) was a notice of intention to sue on the original note and seek to recover attorney's fees according to its terms, and not to recover such fees under the second note.

5. Section 6037 of the Civil Code of 1910, which provides for the filing of a quitclaim deed and the sale of property under a judgment for purchase-money, does not authorize a vendor of land who has taken several notes for the unpaid purchase-money thereof to transfer them to different persons and to convey to each of them an undivided interest in the property in proportion to the part of the unpaid purchase-money so transferred to him, and thus empower such transferee to obtain judgment, file a deed, and sell such undivided interest in the manner pointed out by the statute (Civil Code of 1910, § 6037), or to obtain a general judgment against the purchaser together with a special lien upon the undivided interest in the land so conveyed.

(a) Where land is sold, bond for title given, and notes taken for an unpaid part of the purchase-money, the title in the hands of the vendor as a whole stands as a security for the unpaid indebtedness. If the vendor could separate the title into fractional undivided interests and convey them to various transferees of different purchase-money notes, some of which might be paid in whole or in part, while others might remain entirely unpaid, and the transferees could proceed separately to sell the undivided interests conveyed to them as security for the notes transferred to them, danger would arise that the property would not bring its full value if sold piecemeal; and the purchaser would not be subjected to a single sale, which might more than pay the entire balance due, but would be forced to submit to a number of separate and distinct sales of undivided interests.

(b) This danger is well illustrated by the facts of the present case, the property being mill property, and including land, a water-power, a mill building and machinery.

(c) If the transferees of the notes agreed to such conveyances of undivided interests to them respectively, they might not be in a position to complain thereof. But if they did not so agree, and if a conveyance of an undivided interest could be made by the vendor to one creditor, which would authorize him to sell such interest separately, it might affect the security of the holders of other notes. So, also, unless the purchaser agreed to such separate conveyances, or estopped himself from complaining, he could do so.

(d) As a general rule, no decree of foreclosure of a common-law mortgage (where the title was conveyed as security) could be made, unless all the parties entitled to the mortgage money were before the court. In this State there can be but one foreclosure of a mortgage. Whether, under some circumstances, as between the original parties, or as between transferees of purchase-money notes, where the title has been retained by the vendor as security, there may be a right to obtain equitable relief is not now in question. On this subject see 27 Cyc. 1564; Civil Code

(1910), §§ 3285, 3317; *Brown* v. *Farmer*, 94 *Ga.* 178 (21 S. E. 292); *Berrie* v. *Smith*, 97 *Ga.* 782, 786 (25 S. E. 757); *Willingham* v. *Huguenin*, 129 *Ga.* 835, 840 (60 S. E. 186).

6. It follows from what is said in the preceding headnotes, that it was error to direct a verdict in favor of the plaintiff for the balance of the principal due on the original purchase-money note held by the plaintiff, with interest at the increased rate specified in the second note, and ten per cent. attorney's fees on the amount of such principal and increased interest, and with a special lien on a seven-tenths undivided interest in the land (that being the undivided interest conveyed by the vendor to the bank when such vendor indorsed one of the purchase-money notes to it).

7. The assignments of error which complained of the striking of an amendment to the answer of the defendants, and of certain statements of the trial judge in connection therewith, were not argued in the brief of counsel for plaintiffs in error, and are treated as abandoned. What is held above substantially disposes of the case in so far as the assignments of error were urged.

*Judgment reversed. All the Justices concur, except Hill, J., disqualified.*

OCTOBER 2, 1913.   REHEARING DENIED OCTOBER 4, 1913.

Complaint. Before Judge Fite. Bartow superior court. January 16, 1912.

*Finley & Henson, J. P. Brooke,* and *George F. Gober,* for plaintiffs in error. *J. T. Norris* and *J. H. Porter,* contra.