## OTTAUQUECHEE SAVINGS BANK *et al. v.* ELLIOTT.

*Baum & Baum* and *E. J. Clower,* for plaintiff in error.

*Lee W. Branch,* contra.

RUSSELL, C. J. (After stating the foregoing facts.) The transaction we are called upon to adjudicate in this case is one in which the Ottauquechee Savings Bank, a corporation of Vermont, loaned G. D. and J. T. Mitchell $6723.83, and as security for the debt took a deed with power of sale. The debt to be secured was evi-

denced by two notes, one for $5696.05 and one for $1027.78. The note for $1027.78 was transferred and assigned, without recourse, to Sessions Loan & Trust Company. In the course of time the Ottauquechee Savings Bank was proceeding to exercise the power of sale conferred by the deed from the Mitchells and to advertise the land for sale, when George L. Elliott, the transferee of the note for $1027.78, obtained an interlocutory injunction forbidding the sale unless the Ottauquechee Savings Bank, as directed, should divide the money obtained by the sale with Elliott, prorated in proportion to the amounts of the two respective claims. The question, therefore, is as to the respective rights of the Ottauquechee Savings Bank, as a quasi-trustee under the original deed securing both the greater and the smaller note, and the claim of Elliott as a purchaser from the Sessions Loan & Trust Co., which was itself a transferee of the Ottauquechee Savings Bank. The transaction was not completed by the assignment of the note without recourse by the Savings Bank to the Loan Company; for contemporaneously, as a part of the same transaction, the deed delivered by the Savings Bank to the Loan Company contained a. recital that the "Ottau-quechee Savings Bank does by this instrument assign and transfer the title to the within described property to said Sessions Loan & Trust Co., *subject* and *subordinate,* however, to the loan deed hereinbefore referred to from said G. D. & J. T. Mitchell to said Ottauquechee Savings Bank, with which said deed the deed here-with shall not in any wise conflict, and the within deed to be avail-able and enforceable only upon the payment of the principal note for $5696.05, hereinabove referred to." This recital in the instru-ment, which necessarily affects the rights of Elliott as transferee, was evidently made for the express purpose of changing, by con-tract, the inevitable result which but for the recital would have accrued as a matter of law. In the original deed from the Mitchells to the Savings Bank two notes are secured. The Savings Bank held one, and transferred the other to the Loan Company, who there-after assigned its rights to Elliott. The Civil Code, § 4276, de-clares: "The transfer of notes secured by a mortgage or otherwise conveys to the transferee the benefit of the security. If more than one note is secured, and the mortgagee transfers some and retains others, the holder of the transferred notes has a preference over the mortgagee if the security is insufficient to pay all the notes."

Therefore it was not necessary for the protection of the loan company or its transferees to have executed this deed, or any deed. The execution of the deed could have been for no other reason than that of reducing to writing the understanding of the parties, at the time of the transfer of the notes and the execution of the deed, that the note for $1027.78 was not to take that precedence to which as a matter of law it would be entitled unless the transferee waived a right which would by law be inevitably accorded to him. The deed from the Mitchells to the bank covered an entire tract of land, and was security for both notes; and under the general rule embodied in § 4276, the assignment of the note or other evidence of debt carried with it the security for the payment of the note, whatever it might be, if there had been no expression limiting, restricting, and expressly waiving the rights of a transferee. The savings bank, even under the power of sale conferred upon it in the deed executed by the Mitchells, no matter when the bank under this power brought the land to sale, would have been a mere trustee required to pay the assignee of the note—the loan company or Elliott—its proportionate share of the proceeds, first and in full, no matter how the original payee of the note might fare. A waiver of the express statutory preference in § 4276 is very apparent from the recital in the deed that "Ottauquechee Savings Bank does by this instrument assign and transfer the title to the within described property to said Sessions Loan & Trust Co., subject and subordinate, however, to the loan deed hereinbefore referred to from said G. D. & J. T. Mitchell to said Ottauquechee Savings Bank, with which said deed the deed herewith shall not in any wise conflict, and the within deed to be available and enforceable only upon the payment of the principal note for $5696.05, hereinabove referred to." The Civil Code (1910), § 10, provides: "Laws made for the preservation of public order or good morals can not be done away with or abrogated by any agreement; but a person may waive or renounce what the law has established in his favor, when he does not thereby injure others or affect the public interest." It is clear, therefore, that by the acceptance of this deed the Sessions Loan & Trust Co., being bound by this recital, waived the rights of the benefit conferred by § 4276. It may be that this company realized that there were good reasons why it was proper or expedient that its claim should be subordinated to that of the bank. It appears from

the record that the bank owned the land by purchase under foreclosure of a former security deed given to the bank by a farm borrower, and that the bank was selling this land to the Mitchells for a consideration of $5696.05, which sum represented the exact amount that the bank had invested in the loan, as principal, interest, etc., in consequence of the prior loan. It is very clear that the bank was executing the deed to the Mitchells, and taking from them a note for the purchase-price, in order to have this money invested in a loan secured by a farm, instead of owning the farm. Both the savings bank and the loan company must be presumed to have known the law as embodied in § 4276, and therefore to have known that if, in order to secure the loan company, that corporation was included as a part of a contemporaneous transaction in which it was intended primarily to be security to the bank for the payment of the purchase-money, still notes were taken (representing a sum in excess of the purchase-price) and the consideration should be divided into two notes, and one of them transferred to the loan company, the latter would obtain a preference, and thereby the payee of the note for $5696.05 would be subordinated to the loan company's claim. Aside from this imputed knowledge of the law, and the actual knowledge of both the bank and the Sessions Company as to the facts, no other conclusion can be reached than that by acceptance of the deed executed by the Ottauquechee Savings Bank to the Sessions Loan & Trust Company there was an express waiver of the preference given under the terms of Code § 4276.

*Judgment reversed. All the Justices concur.*